My name is Kelsey Salas and I, along with Ulysses Solis and Professor Evangeline Abrel, represent the petitioner, Ms. Guevara-Serrano. Ulysses and I will each speak for six minutes and respectfully request to reserve three minutes for rebuttal. This case is before you because Ms. Guevara-Serrano- I'm sorry, could I just ask, are you dividing issues or are you just dividing the time between the two of you? She's in time. Okay, and which issues are which of you? I will be discussing that the agency erred in finding that Ms. Guevara-Serrano failed to establish that the Honduran government was unwilling and unable to protect her from her abuser. And Ulysses will be discussing that the agency erred in finding that Ms. Guevara-Serrano was not persecuted because of her religious beliefs. Thank you. This case is before you because Ms. Guevara-Serrano, a native Honduran woman, suffered severe abuse at the hands of her former partner, a gang member named Oscar. Ms. Guevara-Serrano was a minor at the time she entered the relationship. After she started to attend church, Oscar began abusing her daily. At its worst, she suffered a stab wound to the stomach. The IJ denied Ms. Guevara-Serrano's application for asylum, withholding of removal, and relief under CAT. The BIA adopted and affirmed the IJ's decision, citing matter of bravado. In finding that Ms. Guevara-Serrano failed to prove that the Honduran government was unwilling and unable to protect her from her former partner, Oscar, the agency made three errors. First, the agency made a legal error by applying the wrong standard and focusing on Ms. Guevara-Serrano's failure to report without considering her reasons for reporting, which were that it would have been futile and dangerous. Second, the agency erred by failing to consider specific pieces of evidence that would have demonstrated that reporting would have been futile and dangerous. Lastly, the BIA made an impermissible finding of fact as to whether Ms. Guevara-Serrano demonstrated futility. The agency erred by focusing on Ms. Guevara-Serrano's failure to report without considering whether reporting would have been futile and dangerous. The Ninth Circuit has held that an applicant who has suffered persecution at the hands of a private party need not report the abuse if they can prove that reporting would be futile or dangerous. Although whether an applicant has reported is a factor to be considered, it is not dispositive. Could I ask you, so you listed your three issues, and on the second issue, I think you're arguing that the record compels the conclusion that the police were unwilling and unable to help, or unwilling or unable to help. If we agreed with you on that second issue, do we need to reach this first issue? As for the legal standard, Your Honor, I believe that there would still be, I believe if you find that it's unwilling and unable, you would not have to find that there was a per se reporting requirement because the argument is that by demonstrating futility and that reporting would have been dangerous, she thereby demonstrated, but if you find that the evidence is enough to compel the conclusion, then you would not need to reach the first issue. So if we, what did she testify to on this point? So as for dangerousness, which was not considered by the IJ or the BIA, she had testified that he had threatened to take her life over a dispute over their children, and when she attempted to intervene, he stabbed her in the stomach, and she had to go to the hospital. I understand that, but on the government being unwilling or unable, what did she, did she testify as to that point? She testified to a general awareness of the government being, of, quote, that the police did not care for what women had to say about these issues. She also testified about the dangerousness that posed, but on the exact issue of being unwilling or unable, the country conditions support this finding, showing that there are high rates of impunity and corruption. In fact, citing that 75% of homicide investigations are not investigated and 88% never reach a judicial resolution, showing that the government has trouble effectively carrying out their laws, as well as a cite to a U.S. Department of State report showing that Honduras ineffectively, ineffectively enforces their domestic violence laws. I thought there was evidence that a man had been beaten and the police didn't do anything. Yes, there was also that testimony. She testified that her persecutor had once before been arrested for a mugging against a male victim, and that she also testified that he had other victims, but others were afraid to report him because they were worried that he would kill them. It appeared that the evidence put in the record by the Attorney General was very limited on country conditions. Do you agree with that? Yes, Your Honor. And how do we weigh that then? If we have a lot of evidence from your side and not much from the other side, how should we weigh that? Well, Your Honor, we would ask that this court find that it was an error for the IJMBIA not to consider all evidence on the record. We find that the IJ conducted a selective analysis of our own evidence in the country conditions as well as the testimony, and this court has held that the IJMBIA must consider all relevant evidence on the record pertaining to this issue. As for the BIA's impermissible finding of fact, the BIA explicitly said that Ms. Guevara-Serrano did not establish futility as one of its reasons for agreeing with the IJ. This would be an impermissible finding of fact as the IJ never reached a conclusion on this issue. I see I'm running out of time, so thank you so much. Thank you. Good morning, Your Honors, and may it please the Court. My name is Ulises Oliz and I am also representing Ms. Guevara-Serrano. Today, or actually, I'm sorry, here the immigration judge found that Ms. Guevara-Serrano suffered past harm that rose to the level of persecution because Oscar would regularly verbally abuse her, insult her religion, threaten to kill her, beat her, raped her, and even attempted to kill her when he stabbed her in the stomach, which supports that the only remaining issues in this case were that the government's ability to protect Ms. Guevara-Serrano as discussed by my co-counsel, Kelsey, a nexus which I will be addressing as it pertains to Ms. Guevara-Serrano's religion as a devout Seventh-day Adventist. Right, because you would agree that simply the partner's injuring her and beating her up would not be enough to show any nexus to a protected ground. Yes, Your Honor. You must show that there is a protected ground, and there are three reasons why there is a First, the I.J.'s finding that there was no nexus is not supported by substantial evidence. Second, the I.J. failed to conduct a proper mixed motives analysis. And third, the I.J. failed to use the proper standard when they only used the but-for test and failed to conduct the standing alone inquiry in a mixed motives case. The government seemed to think that the BIA hadn't even incorporated this part of the I.J.'s analysis, that nexus wasn't even a basis for the BIA's ruling. And it seemed like maybe you thought that in your brief as well. But are you reading the BIA as incorporating through the Bourbano reference and the citations to nexus, reaching the nexus argument? Yes, Your Honor, that is exactly correct. While religion and nexus were styled as harmless errors in the opening brief, they were asserted and are properly before this court because under the matter of Bourbano, all issues are to the I.J. are deemed to be raised before the board and are therefore exhausted. Oh, I'm not really asking about exhaustion. I'm asking about whether the BIA, one of the grounds of the BIA denying the claim was nexus or whether the BIA only reached the unable or unwilling prong. They primarily discussed the unable or unwilling to prong, but they did reference the religion and nexus in the footnote, I mean, in the parentheticals and footnotes. You think that's enough? It's sufficient, Your Honor. Substantial evidence does not support the agency's finding that Ms. Guevara Serrano's religion was not. Let me ask, did the government address that? The government chose not to, Your Honor, at least not for the brief, but they had opportunity and notice since it was fully briefed on our end, Your Honor. Substantial evidence does not support the agency's finding that Ms. Guevara Serrano's religion was not one central reason for the harm that she suffered because the record is replete with evidence that proves otherwise. The immigration judge found that Ms. Guevara Serrano provided credible testimony. When Ms. Guevara Serrano was specifically asked when the abuse started, she testified that the abuse began because she started going to church and she felt, and Oscar stated that she shouldn't be doing that because of the devil. So he started beating her, hurting her, and mistreating her, and he would tell her not to go. And this is on pages 82 and 83 of the record. So you argue that the IJ ignored this evidence, but the IJ did say that Oscar would insult her religion and stated that he did not believe in God. It's not like the IJ totally ignored this religion evidence. Why should we think that the IJ need to reference every single bit of the testimony about this? Your Honor, by not including the onset or the temporal proximity to when the abuse started, that's substantial evidence that should have been required, given that the onset and temporal proximity can be used as circumstantial evidence as an axis, and that was something that the IJ didn't consider, at least that specific piece in terms of the temporal proximity. And so you'd think that the IJ did look at but for, but not the sufficient cause analysis, but the IJ did say that there's no indication in the record that Oscar was violent with any other Adventists, and that sounds a bit like sufficiency causation, like the idea would be if Oscar didn't attack other people of the same religion, that shows that religion wasn't enough on its own. How do you respond to that part of the IJ's discussion? Yes, Your Honor, the IJ did mention that in their decision. However, Ms. Guevara Serrano doesn't need to prove if he persecuted other Seventh-day Adventists. She need only prove whether there's a nexus between her persecution and her practicing as a Seventh-day Adventist, and she does so here. I mean, I think for a reason, for withholding, that seems very persuasive. But if we're looking at the asylum standard where it really needs to be enough on its own, how do we know that it's, how do we know that IJ was wrong to say that the fact that he wasn't attacking other people of the same religion shows that it's not enough on its own as to her? Well, we can, it's demonstrated just based on her testimony, Your Honor. Again, she provides testimony about the onset of the abuse. She provided testimony that her attendance started to decrease from four days to one or two days because she thought that Oscar would kill her if she found out that she was still going to church. She even testified that she didn't even feel safe praying at home, which is why she would go to church because that was the only place where she felt safe. These facts indicate that religion was a nexus for the persecution that Ms. Guevara Serrano suffered. I see that I am out of time, Your Honor. Thank you. Thank you. Let's hear from the government. Good morning, and may it please the Court. My name is Catherine McKinney, and I represent the Respondent Attorney General in this matter. Your Honors, this Court should deny the petition for review. Substantial evidence supports the determination that the petitioners did not demonstrate that the Honduran government was unwilling or unable to control the private actors they feared, petitioners' former partner Oscar. No record evidence compels a contrary conclusion. This finding is dispositive of the asylum and withholding of removal claims. Accordingly, the Court should deny the petition for review. Substantial evidence supports the agency's finding regarding the government's unwilling or unable determination in this case. Here, the petitioner did not report the past harm to the police. Also, the petitioner did not compellingly demonstrate that it would be futile or dangerous to do so. The petitioner in this case had no prior contact with the police. There was no prior police harassment of her. There was also circumstantial evidence in the record supporting the agency's determination, which the judge identified. In this case, there was a prior arrest of petitioner's partner Oscar, which the agency found the inference from that circumstantial evidence was that the Honduran government, at least in that locality, was actually willing to address Oscar's crimes. How is that a reasonable inference to draw that the police would have protected this petitioner, though? Because part of her claim is that violence against women was ignored, and the victim in that case was a man. And they didn't do anything to him, even when he assaulted a man. Excuse me. I didn't mean to interrupt there. Excuse me. Yes, the agency drew that inference here, and it's the government's position that it was a reasonable inference. Of course, there are other inferences that could be drawn. But, for example, we have in some cases, and there's an allegation here that Oscar was affiliated with a gang. In some of these other cases, we have indication or there's an allegation that the local police are reluctant to arrest someone with a gang affiliation. At least we have here evidence that the local police were willing to arrest him for a different offense, for an assault. So that might defeat the idea that the gang affiliation is the problem, but it doesn't defeat all the country-conditioned evidence that violence against women is ignored. It goes to whether or not the police were willing to arrest Oscar in this case. I take your Honor's point about the rest of the country conditions. And with respect to that, the judge did consider the country conditions evidence that was in the record that consisted of the UNHCR report, Women on the Run, but found that evidence inconclusive. So while there was some evidence in the judgment... But that was only one of many reports that are in this record, and some of the others are even worse. So how do we deal with the fact that the IGA didn't talk about those? So the reports, not to make a distinction between news articles or reports, I think in this record, the background country conditions evidence we have is the UNHCR report. And as far as the State Department reports, we have the International Religious Freedom Report. Some of the sites in Petitioner's Brief to the State Department Human Rights Report, I believe, or just to the footnote in the UNH report, that that was a source. Footnotes 43 and 44 of the UNHCR report. So I don't believe that the petitioners in this case submitted the Human Rights Report for Honduras, but they did submit the UNHCR report, which the judge does discuss. And the judge states that in that report, we did have interviews from various women with their experiences, but the judge simply found that that evidence was inconclusive, and noted the reason why. He found that report lacking in objective evidence as to the government's response. And it's worth noting, as the government noted in their brief, that this is consistent with similar decisions, other panels of this court, with similar fact patterns and similar background evidence. It's strikingly similar to Castro Perez. There we had a Honduran woman, also 17 years old, at the time of the harm. The ex-boyfriend was also a gang member when we had that allegation here. And I do believe there, the country conditions reports in the record were from 2013 to 2014. And we also had the applicant's expression of both fear and belief that the police wouldn't help as a reason for not reporting. So the facts and the background evidence were very similar. And there, what that panel said was the evidence simply didn't compel the conclusion that the applicant suggested. And it's the government's position that that would be the same here. Sorry, could you say the name of that case again? Sorry, which case was this again that you're talking about now? That case that was very similar fact pattern was Castro Perez. And that's cited in the government's brief. Also, a similar, more recent, although unpublished case is the Reyes case from 2025, although unpublished, it's cited in the government's brief. And that was also a Honduran national who did not report the past harm to the police. And what that other panel found was they didn't show- So looking at the published one, because we're not going to talk about the unpublished one as precedent, in Castro Perez, I know that the petitioner was afraid of her father, but I don't recall that there were death threats the way there were here. I mean, there's pretty specific testimony here that the abuser threatened to kill her and that other people said that they were worried about his violence as well. So I don't, do you think that, can you point to a place where that was true in Castro Perez? I believe in Castro Perez the fear was from the ex-gang member. There were allegations of rape and then also fear from the father. I cannot, off the top of my head, point to death threats as if that's the one distinguishing factor. The government's position would be that it still wouldn't be compelling record evidence contrary to the agency's determination here. Here, it's worth noting that- Sorry. Did the government in this case offer any evidence of country conditions that would be, reach a different conclusion than what the petitioner has put into the evidence? It is the petitioner's burden to meet their burden of proof, and I know that the petitioners, as the applicant submitted the background materials here, but it's not the government's burden to rebut anything. I think what the judge was tasked with doing was looking at the record presented to her in this case and determining what that background evidence, regardless of which party submitted it, showed. And the judge here in this case found that there was some evidence, but that it was inconclusive or insufficient or not enough. It's worth noting here that in the judge's 12-page written decision, she does acknowledge the severity of the harm. Indeed, she finds that the harm rose to the level that would be necessary for a finding of past harm persecution. It's just that the petitioner didn't meet her burden of proof on the other aspects of the case. And in discussing that past harm, she does note that the petitioner was threatened repeatedly and stabbed and verbally abused. The level of harm was severe, but that's not the only aspects in these cases. Obviously, for example, in Castro Perez, where we had also domestic violence and a rape accusation, you still have to meet your burden of proving that the government would be unable or unwilling to help you. And even if this is a close case, as we've noted, it's similar to cases where other panels of this court have agreed with the agency or at least found that the evidence didn't compel a conclusion contrary to the agency. So even if it's a close case, the agency wasn't required to draw the inferences from the record that the petitioners suggest, and the evidence here doesn't compel a contrary conclusion. I did... So can I ask... Hold on. Even if we thought you might be right, that the evidence didn't compel a conclusion, which I don't know if we'll agree with you or not, but there's a threshold question about whether the agency even applied the right legal test here because it really seems that the agency treated the failure to report as dispositive, and our case law says that that is wrong. So how do you deal with that problem? At the very least, it seems like we would have to remand this issue, wouldn't we? So the government respectfully disagrees that what the agency did in this case was impose, per se, a reporting requirement. It appears a fair reading of the agency's decision is that both the judge and the board addressed the government unwilling or unable determination. That's the finding they had to make. And one factor in considering that is whether or not an individual reported. And it appears from this case that what the judge is doing is considering whether or not the applicant had reported as a factor and then goes on to discuss the stated reasons for not doing so, that she didn't believe the police would assist her, goes on to address how the country conditions evidence impacts that, and then the board, in affirming, specifically says that she didn't report and she also didn't show that it would be futile or dangerous to do so, affirming the immigration judge's decision. So the board's understanding of that finding is the same as the government's in its brief, that the immigration judge had addressed that she didn't report as factor, but they also addressed reasons for not doing so and made the ultimate determination that she didn't submit enough evidence to meet her burden. Well, I'm not sure that that's how to read the agency, the board decision, because they say that the respondent did not seek the authority's protection. The respondents have not persuasively challenged this determination on appeal. As such, we affirm the immigration judge's determination that the respondents have not demonstrated they would be unwilling or unable. So it seems to me they are, you can read that, they're relying almost exclusively on the failure to report, which we have said is not sufficient. I believe if we look at the board's decision, the second page of the board's decision when they say they're adopting the judge's decision to deny based on the fact that she didn't show that the Honduran government would be unwilling or unable to protect the petitioners. And then they go on to say, and as the judge observed, the petitioners did not seek the authority's protection, did not report a former partner to police, and did not demonstrate that reporting would be futile and noting that they hadn't made persuasive arguments on appeal. So I think they're there looking both at the fact that the individual applicant didn't report, but also that she didn't demonstrate that reporting would have been futile. So in that, and then citing back to the IJ's decision, so that's what the board is saying, but also the board's understanding of the immigration judge's findings. It's the government's position that from the context here, it's clear that the judge was considering not reporting as one factor in its overall analysis and also considering the reasons for not doing so. Before you run out of time, could I ask you about the nexus issue? Because petitioner has argued that the board reached the nexus issue and you have argued that the board didn't. And so what should we do about this? Yeah, so it's the government's position that the board, when adopting and affirming and citing Burbano, they're saying they're adopting and affirming the decision to deny based on the government unwilling or unable determination. That's the only thing they discuss. That's the only analysis. And that's dispositive. So it was unnecessary for them to reach the other issues. But what if we disagree with you on that issue, though? And so what if we think you're wrong and the record compels the conclusion that the police were unable or unwilling? Then what do you think should happen? Because it looks to me like the BIA goes on and talks about nexus, but you're saying we should ignore that. So what do you want us to do if we disagree with you on the problem you have briefed? Okay, so I just want to point out that petitioners also agreed in their opening brief they specifically say on page, I believe it's page 39, that BIA did not reach the issue of nexus. I agree they said that also. So both sides said that. And so what should we do now? What should we do if we disagree with you on what you have briefed? We do agree that both parties agree that the board didn't reach nexus, at least that's what they said in their opening brief. If the court disagrees or finds otherwise, we don't have a board decision on that matter. So then it would be more appropriate. There's lack of a board decision in the first instance there. I don't believe the board is adopting the nexus determination. So a remand would be more appropriate if the court finds that that was error, that analysis is lacking. And if we read the board differently, is your position what we need to follow, though? I mean, now that you're saying this here, does that mean that we should just do what you're saying, even if we don't read it that way? Well, the government's position would be that the board didn't analyze that, and obviously that wasn't discussed in the government's brief, because the petitioners in their opening brief, when they had an opportunity to address this issue, said that the board didn't reach it. So they were conceding, or at least agreeing, that the board didn't read it. And although they did go on to argue merits, they said they were doing so in order to establish that any error wasn't harmless, which is obviously different than what I believe they're saying today or saying in the reply brief, that somehow the citation to Bourbon, which I believe that's their argument, that by citing Bourbon, that the board was adopting the decision as a whole, or at least as a whole with the exception of what the board said had been unexhausted or waived. And we just disagree with that interpretation. But we also note that that, from reading the opening brief, that our understanding of their arguments would be that they all, that nexus hadn't been reached. But if the court disagrees, yes, it would be the government's position that it would be best to let the board address that on the merits, because we don't have a board decision or analysis on that. I believe that the board was just adopting unwilling or unable determination because that was dispositive, and it would be unnecessary for them to raise issues that are unnecessary for them to do so. So for the foregoing reasons and for the reasons noted in the government's  we would request that the court affirm the agency decision and deny the petition for review. If the court has no further questions. Thank you. We have some time saved for rebuttal. Hello, Your Honors. On rebuttal, I'd like to make three points. The first point, as for the arrest, we are not asking for a different inference to be drawn from Oscar's  We're merely asking the court to consider all evidence when considering the arrest. The country condition report shows that two Honduran women had similar experiences in which they reported their abuse to the police. Their abusers were arrested for 24 hours and released, as well as another woman who had reported her abuser to the police who was affiliated with a gang and that the police officer handed this report over to the gang, which shows that this could have been dangerous and futile because the response would not have been sufficient to protect Ms. Guevara Serrano. Sorry, where is that evidence? AR-171 is the two experiences from the Honduran women who had reported and saw their abuser released. And it's in the Women on the Run article. And as for the other one, it is on page, one moment, I'm so sorry. It is also in the Women on the Run article. And that would be on page AR-165. And then as for dangerousness, this also showed that it was dangerous considering the evidence of the multiple threats, the attempt on her life, the threats that he would use his gang connections to hurt her. And he said that they would take his orders, which she interpreted to mean kill her. And so looking, considering all of the evidence on the record with this one arrest, this shows that any response from the government would have been futile and led to more danger for Ms. Guevara Serrano. Second, as for Castro Perez, that case is distinguishable from our case. That case was about a Honduran woman. However, the court found that the Honduran government treats rape and domestic violence as two separate crimes. And they had found that the Honduran government in that case had enforced laws against rape. And so, but they had not found that domestic violence laws had been effectively implemented. And in this case, this is about domestic violence, not rape. And as for the third. It's about both, right? Yes, there is still rape. But I wouldn't say that it's exclusively rape. It is both. And so the government's or the court's finding that did not find that domestic violence was effective. But one is a subset of the other, I suppose. Yes. Yes, Your Honor. And as for the third, again, the IJ and the BIA failed to mention futility and dangerousness. And so that is the incorrect legal standard, failing to consider her reasons for not reporting. In Orniles Chavez vs. Gonzales, this court found that it was error for the IJ and BIA to focus on the petitioner's credible testimony that he had not reported, while disregarding all of the reasons for why he did not report, such as the indifference he suffered from the police. I see I'm running out of time. Would you just tell us what your position is with respect to Nexus and whether the board reached it or not? Because of the cite to Bourbono and because the BIA did not expressly show any disagreement with the IJ's decision, we would say that it was in front of the BIA. And for those reasons, it would be proper to bring it up here. All right. Thank you so much. Thank you, both sides, for the helpful arguments. This case is submitted, and thank you very much for taking on this pro bono representation. We really appreciate it, and it's very helpful to our court to have great representation like this.
judges: SCHROEDER, FRIEDLAND, Schreier